**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL CASE NO. 24-4-DLB-CJS**

**UNITED STATES OF AMERICA**             **PLAINTIFF**

**v.**           **MEMORANDUM ORDER
ADOPTING REPORT AND RECOMMENDATION**

**JOHNNIE BROUGHTON
JAYCE CHRISTOPHER GIBBS**            **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the November 25, 2024 Report and Recommendation ("R&R") of Magistrate Judge Candace J. Smith (Doc. # 53), wherein she recommends that the Court deny Defendant Jayce Christopher Gibbs' Motion to Suppress (Doc. # 40) and Defendant Johnnie Broughton's Motion Joining Codefendant Gibbs' Motion to Suppress (Doc. # 42). Defendants have filed Objections to the R&R (Docs. # 54 and 55), the United States has filed a Response to the Objections (Doc. # 57), and the R&R is now ripe for the Court's consideration. For the following reasons, Defendants' Objections are each **overruled**, the R&R is **adopted** as the Opinion of the Court, and Defendants' Motions are each **denied**.

**I.**      **FACTUAL BACKGROUND**

In September 2023, officers with the Boone County Crime Suppression Unit ("BCCSU") learned from a confidential informant ("CI") that Defendants were trafficking narcotics. (Doc. # 53 at 1). The CI specifically informed the officers that he or she had bought narcotics from Defendants and had communicated with them via Facebook

1

Messenger. (*Id.* at 1-2). BCCSU officers then served Facebook with a preservation request for both of Defendants' Facebook accounts, conducted a controlled buy of marijuana from Defendants through the CI, and obtained and executed a search warrant for Defendants' joint residence. (*Id.* at 2). At the residence, officers uncovered a large supply of narcotics and ammunition, several firearms, and various drug paraphernalia. (*Id.*).

On October 5, 2023, BCCSU Deputy Robert Andres sought search warrants for each of Defendants' Facebook account data. (*Id.*). In the affidavits for both warrants, Deputy Andres outlined the information officers had already obtained in their investigation of Defendants. (*Id.*). Deputy Andres also stated that based upon his training and experience, drug traffickers commonly use social medial platforms to sell illegal narcotics and that there would be evidence of narcotics trafficking on Defendants' Facebook accounts. (*Id.*). A Boone County district judge issued the requested search warrants that same day, which required Facebook to surrender data with the following scope:

> [a]ny and all information, electronic storage devices, records, or other documents, including electronic image files, agreements, contracts, membership data, account information and history, IP transaction log data, location data, including information or any other data, stored or saved videos or photos with the Facebook Account for the previous amount of days possible per Facebook policies concerning [each of Defendants' Facebook account usernames].
>
> Messages sent and received in addition to any and all electronic storage devices, records, or other documents, including electronic image files, agreements, contacts, membership data, account information and history, IP transaction[s], log data, location data and stored or saved videos or photographs within these Facebook accounts for the previous amount of days possible per Facebook policies displayed at [each of Defendants' Facebook account usernames].

(*Id.* at 2-3; Doc. # 4-1 at 1-3).  Upon executing the warrants, officers uncovered a total of 32,092 pages of documents from Gibbs' Facebook account and an unknown number of documents from Broughton's Facebook account.[1]  (Doc. # 53 at 3).

On February 8, 2024, a federal grand jury in Covington, Kentucky indicted Defendants on various charges involving the possession with intent to distribute narcotics and the illegal possession of firearms.  (Doc. # 3).  On August 8, 2024, Gibbs moved to suppress all evidence obtained through the Facebook search warrants, arguing that they were overbroad and thus violated the Fourth Amendment.  (Doc. # 40).  One day later, Broughton joined in Gibbs' Motion to Suppress.  (Doc. # 42).  After the United States filed a Response (Doc. # 43) and Defendants each filed a Reply (Docs. # 44 and 45), Judge Smith held oral argument on the Motions on October 18, 2024.  (Doc. # 51).  Following oral argument, Judge Smith issued her R&R in which she recommended that Defendants' Motions be denied.  (Doc. # 53).

## II.     REPORT AND RECOMMENDATION

By way of background, the parties presented various arguments to Judge Smith regarding (i) whether the warrant affidavits were supported by probable cause; (ii) whether the warrants were overbroad; (iii) if the warrants were overbroad, whether any overbreadth could be cured by severance; and (iv) if the warrants were overbroad and could not be cured by severance, whether the good faith exception articulated by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984) saved the evidence at issue

---

[1]     BCCSU officers also obtained a warrant to seize funds in Gibbs' Cash App account.  (Doc. # 53 at 3-4).  In his original Motion to Suppress, Gibbs challenged the legality of the Cash App warrant.  (Doc. # 40).  But upon review of the R&R and Gibbs' Objections, Gibbs no longer challenges the legality of the Cash App warrant.  (*See* Doc. # 53 at 4 n.5; *see also* Doc. # 54).  Thus, the Court will not address the issue.

3

from exclusion.  (*See* Doc. # 53).  In her R&R, Judge Smith determined that although the warrants were supported by probable cause, they were overbroad.  (*Id.* at 4-12).  That said, Judge Smith determined that the *Leon* good faith exception applied, and accordingly recommended that Defendants' Motions should be denied.  (*Id.* at 12-18).

Upon review, Defendants' Objections to the R&R only concern Judge Smith's finding that the *Leon* good faith exception applied.[2]  (*See* Docs. # 54 and 55).  Accordingly, the Court will only summarize the R&R as it relates to Judge Smith's good faith finding, and only to the extent necessary to address the Objections.

Judge Smith began her discussion of the good faith exception by generally outlining it.  As Judge Smith noted, the exception allows otherwise excludable evidence to be admitted where it was "seized [by officers] in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective."  (Doc. # 53 at 13 (quoting *Leon*, 468 U.S. at 905)).  Judge Smith further noted that the exception applies when "the evidence was obtained in objectively reasonable reliance on the subsequently invalidated search warrant."  (*Id.* (quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016))) (internal quotation marks omitted).  In *Leon*, the Supreme Court described four circumstances where an officer's reliance on a subsequently-invalidated warrant would not be reasonable: (1) "if the magistrate or judge in issuing [the] warrant was misled by information in an affidavit that the affiant knew was false or would have known was false

---

[2]   In its Response to the Objections, the United States briefly argues that "the Court need not apply [the] good-faith exception as the search warrant is sufficiently particular and not overly broad[.]"  (Doc. # 57 at 5).  In support, the United States merely cites to "the reasons set forth in the United States's [initial] response."  (*Id.*).  Holding aside whether incorporating by reference arguments already made (and rejected) before Judge Smith is sufficient to raise them here, the Court concludes that it need not address these arguments.  This is because, as explained below, the Court concludes that the *Leon* good faith exception applies to the warrants.

except for his reckless disregard of the truth;" (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned;" (3) "when a warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) "when a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

Before addressing the parties' arguments on the merits, Judge Smith noted that only the third and fourth circumstances outlined in *Leon* seemed to be implicated here. (Doc. # 53 at 13). As Judge Smith noted, there was no suggestion that the affiant presented false information that he knew was false or was in reckless disregard as to its falsity. (*Id.*). Nor was there any suggestion that the state judge abandoned his judicial role in issuing the warrants. (*Id.*). Judge Smith accordingly only analyzed the third and fourth *Leon* circumstances, finding that neither applied. (*Id.* at 14-18).

As to the third *Leon* circumstance, Judge Smith noted that it only applies to "bare bones" affidavits, or those that contain only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." (*Id.* at 14 (quoting *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017))). An affidavit is not bare bones if "there is a minimally sufficient nexus between the place to be searched and the evidence sought." (*Id.* (quoting *United States v. Helton*, 35 F.4th 511, 521 (6th Cir. 2022))) (internal quotation marks omitted). In other words, there must be "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity and the place to be

5

searched." (*Id.* (quoting *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021))). Here, Judge Smith noted that the affidavits at issue contained substantive facts establishing a sufficient nexus between drug trafficking and the Facebook accounts, such as (i) the interactions between the CI and Defendants via Facebook Messenger and (ii) the search of Defendants' residence and subsequent discovery of large quantities of narcotics there. (*Id.*).

As to the fourth *Leon* circumstance, Judge Smith noted that it applies where "a reasonably-trained officer would have known that the search was illegal despite the magistrate's authorization." (*Id.* (quoting *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009))). As Judge Smith noted, "[t]he Sixth Circuit has interpreted this as a mainly 'technical' requirement such that an affiant must only correctly state 'the place to be searched or the object to be seized.'" (*Id.* at 15 (collecting cases)). And the Supreme Court in *Leon* explained that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." (*Id.* (quoting *Leon*, 468 U.S. at 921)). Additionally, Judge Smith cited to various cases within and outside the Sixth Circuit in which courts determined that the *Leon* good faith exception applied to overbroad warrants. (*Id.* at 15-16 (collecting cases)).

Judge Smith concluded that "a reasonable well-trained officer would not have known that the search was illegal." (*Id.* at 16). In support, Judge Smith noted that like the officer *United States v. Hamilton*—in which this Court held that an overbroad Facebook warrant satisfied the *Leon* good faith exception—Deputy Andres had authorization from a neutral judicial officer and that nothing in the record suggests that he

6

was unreasonable in his reliance on the judge's issuance of the warrant. (*Id.* at 16 (citing No. 6:18-cr-00057-REW-10, 2019 WL 4455997, at *5-7 (E.D. Ky. Aug. 30, 2019). Additionally, Judge Smith noted that Sixth Circuit caselaw regarding the appropriate breadth of social media warrants is "unsettled," and reasoned that "[k]nowledge of the *Hamilton* decision is exactly the type of determination the neutral and detached magistrate issuing the warrant should be aware of, not the officer." (*Id.* (citing *Leon*, 468 U.S. at 916)).

That said, Judge Smith stated that the *Leon* good faith exception "cannot sanction overbroad warrants indefinitely." (*Id.* at 17). Indeed, the Middle District of Georgia has held that the Eleventh Circuit's decision in *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017) regarding overbroad social media warrants "put law enforcement on notice" such that the good faith exception did not apply. (*Id.* (quoting *United States v. Mercery*, 591 F. Supp. 3d 1369, 1383 (M.D. Ga. 2022)). But as Judge Smith noted, the *Blake* decision is from the Eleventh Circuit, and at least one district court has held that it could not serve as notice for law enforcement outside of that circuit. (*Id.* (citing *United States v. Roberts*, No.122CR00136, 2023 WL 5509261, at *4 (S.D. Ind. Aug. 25, 2023))). And, as noted above, "such case law is not yet developed in the Sixth Circuit that would warrant imputing that knowledge to a reasonable officer." (*Id.* (citing *United States v. Whitt*, Case No. 1:17cr060, 2018 WL 447586, at *4 (S.D. Ohio Jan. 17, 2018))).

For these reasons, Judge Smith recommended that Defendants' Motions should be denied.

7

## III. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Criminal Procedure 59(b)(1)(2), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered waiver of the party's right to review. Fed. R. Crim. P. 59(b)(2).

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (footnote omitted). Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001). "Moreover, 'an "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.'" *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).

8

### B. Defendants' Objections

Defendants have each filed Objections to the R&R. (Docs. # 54 and 55). For organizational purposes, the Court first addresses Broughton's Objections before turning to Gibbs' Objections.

#### 1. *Broughton's Objections*

Broughton's Objections (Doc. # 55) state in full as follows:

> The Defendant, JOHNNIE BROUGHTON, through counsel, files his objections to the Magistrate's Report and Recommendation. The Defendant objects to the Magistrate's finding that information obtained through the search warrant for Defendant's Facebook account is not subject to suppression because of [sic] the application of the *Leon* good faith exception saves the warrants despite their lack of particularity.
>
> In the case at hand, the Magistrate found that the warrants for Defendant's Facebook accounts were impermissibly broad. The search warrants are akin to a "digital rummaging" of Defendant's belongings seemingly in violation of the Fourth Amendment's particularity requirement. The Magistrate then finds that even through the Facebook warrants were overbroad in scope, the warrants should not be suppressed if the *Leon* good faith exception applies. The Magistrate further finds that because the good faith exception should [sic] to law enforcement's actions in relation to the social media warrants in this case, that Defendant's Motions to Suppress should be denied.
>
> Mr. Broughton does not object to the Magistrate's finding that the Facebook warrants were impermissibly overbroad and lacked particularity. Mr. Broughton objects to the Magistrate's finding that the *Leon* good faith exception applies to this case, and therefore that the Defendant's Motions to Suppress information obtained by the Facebook Warrants should be denied.

(*Id.* at 1-2) (internal record citations omitted).

Broughton's Objections merely summarize what has already been presented to the Court and state his disagreement with Judge Smith's suggested resolution. There is nothing more of substance to Broughton's Objections than what the Court quotes above.

9

His Objections (Doc. # 55) are therefore insufficient and are accordingly **overruled**. *See Vanover*, 2017 WL 1356328, at *1.

### 2. *Gibbs' Objections*

The Court now turns to Gibbs' Objections. (Doc. # 54). Unsurprisingly, Gibbs does not object to Judge Smith's finding that the warrants were overbroad. (*Id.* at 1). Instead, he objects to Judge Smith's finding that the *Leon* good faith exception applies and saves the evidence at issue from exclusion. (*Id.*). Gibbs specifically argues that the officers should have known that the warrants were overbroad under existing precedent. (*Id.* at 1-6). In support, he points to case law from this Circuit and outside of it regarding overbroad social medial warrants—including this Court's decision in *United States v. Huegel*, No. 2:20-cr-00037-DLB-CJB, Doc. # 45—as well as overbroad warrants in general. (*Id.* at 1-5). According to Gibbs, such caselaw "put local law enforcement on notice" that search warrants like those at issue here "are overbroad." (*Id.* at 5). The Court disagrees.

Upon review, it appears that Gibbs is invoking the fourth *Leon* circumstance—that is, when a warrant is so facially deficient that an officer cannot reasonably presume it to be valid. But the Court does not conclude that such circumstance applies here. As noted above, whether a warrant is facially deficient mainly turns on technical considerations such as whether the warrant describes the place to be searched and/or the object to be seized. (*See* Doc. # 53 at 15 (collecting cases)). Here, the warrants did describe what was to be searched and seized. Moreover, the warrants were issued by a neutral judicial officer. As the Supreme Court has noted, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. Thus, to the

extent that Gibbs challenges the facial validity of the warrants, such a challenge lacks merit.

Otherwise, Gibbs claims that the officers should have known that the warrants were overbroad under existing caselaw. But as far as the Court can tell, only *district* courts within the Sixth Circuit have found warrants like those at issue here to be overbroad. Gibbs does not cite—and the undersigned is unaware of—any Sixth Circuit caselaw similarly finding such warrants to be overbroad. Indeed, as one district court in this Circuit has observed, "[w]hile Sixth Circuit jurisprudence on residential and other searches of a suspect is well-developed, Sixth Circuit jurisprudence on searching the Facebook account of a suspect is less so." *Whitt*, 2018 WL 447586, at *4. And upon review, all the other caselaw Gibbs cites regarding social media warrants is from outside of this Circuit. (*See* Doc. # 44).

For these reasons, the Court concludes that the officers' reliance on the warrants at issue was reasonable. Gibbs' Objections (Doc. # 54) are therefore **overruled**.

## IV.   CONCLUSION

Defendants have ultimately failed to raise any meritorious legal objections to Magistrate Judge Smith's Report and Recommendation. Accordingly,

**IT IS ORDERED** as follows:

(1)   The November 25, 2024 Report and Recommendation ("R&R") of Magistrate Judge Candace J. Smith (Doc. # 53) is **ADOPTED as the Opinion of the Court**;

(2)   Defendants Jayce Christopher Gibbs' and Johnnie Broughton's Objections to the R&R (Docs. # 54 and 55) are each **OVERRULED**;

(3) Defendant Jayce Christopher Gibbs' Motion to Suppress (Doc. # 40) and Defendant Johnnie Broughton's Motion Joining Codefendant Gibbs' Motion to Suppress (Doc. # 42) are each **DENIED**; and

(4) This matter is scheduled for a **Scheduling Conference** on **January 17, 2025 at 11:30 a.m.** in Covington.  Defendant Broughton shall appear for the hearing and the U.S. Marshal Service shall ensure that Defendant Gibbs is present for the hearing.

This 9th day of January, 2025.

Signed By:
David L. Bunning
United States District Judge

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2024\24-4 Order Adopting R&R.docx